# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| SHELBY ROE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 15-CV-558-JHP-JFJ |
| | ) | |
| HARCO NATIONAL | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Before the Court is Defendant's Motion for Summary Judgment (Dkt. 41). After consideration of the briefs, and for the reasons stated below, the Motion is **GRANTED**.

## BACKGROUND

The material facts regarding the underlying incident are undisputed. In August 2009, Timothy Roe test drove a commercial truck owned by Frontier International Trucks. Shelby Roe ("Plaintiff"), Timothy Roe's minor daughter, was a passenger. During the test drive, another motorist struck Timothy Roe's vehicle, causing injuries to both Timothy and Plaintiff. The commercial truck was covered by an automobile policy ("Policy") with uninsured/underinsured motorist coverage ("UM/UIM") issued by Defendant Harco National Insurance Company ("Harco"). (Dkt. 41-1 (Policy)). The Policy indicates that the UM/UIM coverage

1

amounted to a combined single limit of $500,000.00 on each accident, and that Plaintiff and Timothy Roe qualified as "insureds" under the Policy. (Policy, at Garage Declarations (p. 150 of 246); *id.* at Oklahoma Uninsured Motorists Coverage (B) (p. 183 of 246); Dkt. 41, at 2 (Harco's Undisputed Material Fact Nos. 2-5)).

On October 30, 2009, Plaintiff's counsel (who also represented Timothy Roe) notified Harco of the accident and filed a claim for UM/UIM benefits on behalf of Timothy Roe. (Dkt. 58-1 (Harco Claims File Notes), at 1; Dkt. 58, at 3 (Plaintiff's Controverted [sic] Fact No. 1)). On May 4, 2011, Plaintiff's counsel sent Harco a claim letter seeking UIM coverage on Plaintiff's behalf. (Dkt. 58-3 (Letter to Harco dated May 4, 2011)). Harco's investigator, Kathy Van Ryn, evaluated Plaintiff's claim and determined it was not worth more than $25,000, the liability limit of the tort feasor's insurance. (Dkt. 65-3 (Kathy Van Ryn Deposition), 90:11-15). Harco paid $500,000 to Timothy Roe in three installments, making the final payment in May 2013. (Dkt. 41-5 (Release)).

On October 9, 2014, Plaintiff's counsel sent Harco a letter regarding Shelby Roe's claim arising out of the August 2009 accident, seeking $31,303.39 in medical damages. (Dkt. 41-6 (Letter)). Harco has not tendered any payment on Plaintiff's claim, asserting the UM/UIM policy limit was exhausted by payment to Timothy Roe. (Dkt. 58, at 7 (Plaintiff's Controverted Fact No. 42)).

Plaintiff filed an Amended Complaint in this case on October 24, 2016, asserting claims for breach of contract and bad faith. (Dkt. 30). The parties have since stipulated to dismissal with prejudice of the breach of contract claim. (Dkt. 92). With respect to the bad faith claim, Plaintiff alleges Hacro acted in bad faith in failing to apportion benefits to Plaintiff and to investigate and evaluate Plaintiff's claims. (Dkt. 30, ¶¶ 10-12). Harco has now filed a Motion for Summary Judgment with respect to the sole remaining claim of bad faith. (Dkt. 41). Plaintiff filed a Response in opposition (Dkt. 58), and Harco filed a Reply (Dkt. 65). Harco's Motion is now fully briefed and ripe for review.

## DISCUSSION

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* In making this determination, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

However, a party opposing a motion for summary judgment may not simply allege there are disputed issues of fact; rather, the party must support its assertions

by citing to the record or by showing the moving party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c). *See Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 530 (10th Cir. 1994) ("Even though all doubts must be resolved in [the nonmovant's] favor, allegations alone will not defeat summary judgment.") (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). Moreover, "[i]n a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988) (citations omitted). Thus, the inquiry for this Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

## I. Bad Faith - Failure to Apportion Coverage

Plaintiff asserts in the Amended Complaint that Harco breached its duty to apportion payment to Plaintiff, which raises a claim for bad faith. In its Motion, Harco argues that no such duty of apportionment exists in Oklahoma, pointing out that the Supreme Court of Oklahoma has never held or even spoken on the issue of apportionment of coverage in this context. In the absence of authority from the Oklahoma Supreme Court, Harco contends it did not breach any obligations under the Policy.

In Oklahoma, insurers owe their insureds an implied duty to act fairly and in good faith. *Willis v. Midland Risk Ins. Co.*, 42 F.3d 607, 611 (10th Cir. 1994). A party alleging bad faith must prove that (1) the claimant was entitled to coverage under the insurance policy; (2) the insurer had no reasonable basis for withholding payment; (3) the insurer did not deal fairly and in good faith with the claimant; and (4) the insurer's violation of its duty of good faith and fair dealing was the direct cause of the claimant's injury. *Ball v. Wilshire Ins. Co.*, 221 P.3d 717, 724 (Okla. 2009). "The absence of any one of these elements defeats a bad faith claim." *Id.* The key question in a bad faith tort claim is "whether the insurer had a good faith belief, at the time its performance was requested, that it had a justifiable reason for withholding . . . payment under the policy." *Id.* at 725 (quotation omitted).

When the insurer's obligation under the duty of good faith and fair dealing is unresolved by conclusive, precedential legal authority, the elements of unreasonableness and bad faith are necessarily absent as a matter of law. *Id.* ("If there is a legitimate dispute concerning coverage or no conclusive precedential legal authority requiring coverage, withholding or delaying payment is not unreasonable or in bad faith.") (citing *Skinner v. John Deere Ins. Co.*, 998 P.2d 1219, 1223 (Okla. 2000)). If an insurer's conduct was reasonable under the circumstances, bad faith cannot exist. *Barnes v. Okla. Farm Bureau Mut. Ins. Co.*, 11 P.3d 162, 170-71 (Okla. 2000).

Harco points out, and Plaintiff does not dispute, that there is no conclusive, precedential legal authority in Oklahoma regarding the apportionment of coverage among first party claims. "For bad faith liability to attach, the law at the time of the alleged bad faith must be settled." *Davis v. Mid-Century Ins. Co.*, 311 F.3d 1250, 1252 (10th Cir. 2002) (citing *Christian v. Amer. Home Assurance Co.*, 577 P.2d 899, 904 (Okla. 1977)). Plaintiff argues it is settled law in Oklahoma that UM/UIM coverage must be offered to an insured. Plaintiff fails, however, to cite to any authority indicating that apportionment of UM/UIM coverage is required in Oklahoma. Accordingly, Harco had no duty to apportion coverage between Timothy Roe and Plaintiff, and Plaintiff's claim for bad faith based on failure to apportion benefits fails as a matter of law. Harco cannot have acted unreasonably or in bad faith toward Plaintiff where Harco had no duty to apportion under Oklahoma law. See *Ball*, 221 P.3d at 725. Accordingly, summary judgment in Harco's favor is appropriately granted on this issue.

In her Response brief, Plaintiff argues that the Oklahoma uninsured motorist coverage statute requires insurance policies to have UM coverage for the benefit of persons who are legally entitled to recover damages from owners or operators of uninsured motorist vehicles because of bodily injury. *See* 36 Okl. St. § 3636. Plaintiff fails, however, to point to any statute or controlling case law that requires apportionment of coverage among claimants in the UM/UIM context. Further,

6

Plaintiff cites to no authority that prohibits a single-limit policy such as Harco's Policy. Oklahoma law requires only that UM coverage provide $25,000 in coverage for a single person and a minimum per-accident limit of $50,000. *See May v. Nat'l Union Fire Ins. Co. of Pittsburgh., Pa.*, 84 F.3d 1342, 1349 (10th Cir. 1996) (holding that the statutory minimum amount of coverage is all that a claimant is owed for UM coverage in the absence of a UM coverage waiver). Here, the Policy provided a $500,000 limit for each accident, which far exceeds the Oklahoma minimum of $25,000 per person/$50,000 per accident. Plaintiff raises no genuine issue of material fact regarding failure to apportion coverage.

## II. Bad Faith - Failure to Investigate and Evaluate Plaintiff's claims

Plaintiff additionally alleges Harco failed to investigate and evaluate Plaintiff's claim as of the date Harco had notice of Plaintiff's claim, as early as May 4, 2011. (*See* Dkt. 58-3 (Letter to Harco dated May 4, 2011)). At that time, the Policy limit had not yet been exhausted in Timothy Roe's favor. Plaintiff alleges this failure to investigate and evaluate her claim amounts to bad faith.

Harco argues summary judgment on this aspect of the bad faith claim should be granted, because Harco insurance investigator, Kathy Van Ryn, did investigate Plaintiff's claim following the May 4, 2011 claim and determined that Plaintiff's claim did not exceed the liability limit of $25,000. (*See* Dkt. 65-3 (Kathy Van Ryn Deposition), 90:11-17). Therefore, the insurance investigator concluded Plaintiff's

claim did not fall into a UM/UIM scenario. That evaluation stood as Harco's basis for withholding payment. Plaintiff does not dispute Ms. Van Ryn's testimony that this investigation and evaluation occurred.

As Plaintiff states in the Introduction to her Response brief, the tort feasor in this case was insured with Allstate Insurance Company, with liability limits of $25,000/$50,000. In Oklahoma, for a claim to qualify as a UM/UIM claim, the value of the claim must exceed the available liability limits. 36 Okl. St. § 3636(C). It appears that Harco delayed in communicating the denial of coverage to Plaintiff's counsel at that time. (*See* Dkt. 58-1 (Harco Claims File Notes), at 14); Dkt. 58-20 (Kathy Van Ryn Deposition), 97:21-25). However, Plaintiff offers no evidence, only argument, to controvert Ms. Van Ryn's testimony that she conducted an investigation and evaluation. Plaintiff's argument is insufficient to defeat summary judgment here.

Moreover, as explained above, the denial of payment to Plaintiff, once the UIM benefit had been exhausted in Timothy Roe's favor, was not unreasonable as a matter of law. *See Ball*, 221 P.3d at 724 n.40 ("Where the [bad faith] tort claim is factually based on a coverage dispute as to which no controlling legal authority provides an indisputable resolution, a determination of the coverage dispute is unnecessary because the elements of unreasonableness and bad faith are not present as a matter of law."). Therefore the earlier delay in communication

regarding Harco's investigation and evaluation of Plaintiff's claim cannot amount to bad faith. Accordingly, summary judgment in Harco's favor is appropriately granted on this issue.

## CONCLUSION

For the reasons detailed above, Harco's Motion for Summary Judgment (Dkt. 41) is **GRANTED**.

James H. Payne
United States District Judge
Northern District of Oklahoma